## RANKIN v. KNIGHT.

Hamilton and Knight were accustomed to accommodate each other by an exchange of checks or notes. Knight gave Hamilton, who wanted to raise money, his check for $1,210, on a bank, payable to the order of Hamilton, and at the same time took from Hamilton a like check, payable to his (Knight's) order, on the same bank, for the same amount. Hamilton transferred Knight's check to a creditor as collateral to an existing debt.

*Held*, that the check was not to be considered as accommodation paper, and that H.'s creditor was entitled to collect the check from Knight, although Knight had not transferred or brought suit on the check which he had received and held from Hamilton.

*Peck & Halstead*, for plaintiff.

*H. Snow*, for defendant.

TAFT, J. This was an action to recover the amount of the following draft, viz:

"CINCINNATI, *December* 31, 1869.

"E. Kinney & Co., pay to Jno. E. Hamilton, or order, twelve hundred and ten dollars. (Signed),

"$1,210. N. S. KNIGHT."

Indorsed: "*Jno. E Hamilton.*"

The petition alleges that payment was demanded and refused. It also alleged that the consideration of the check was an indebtedness of the defendant to Hamilton, which was then due, and equal to the amount of the said check.

The answer of the defendant denies that there was any consideration for the check, and avers that it was merely for the accommodation of Hamilton, and denies the indorsement by Hamilton, and says that if it was indorsed it was done without consideration, and that the transfer by the bank to Rankin, the plaintiff, was without consideration also.

The case was submitted to the judge at Special Term, who

· found for the plaintiff the amount of the check with interest.

A motion was made for a new trial, which has been reserved to the General Term on an agreed statement of the evidence.

It was in evidence, that Hamilton and Knight, one of whom resided in Covington and the other in Cincinnati, often assisted each other financially by paper like that on which this suit is founded. A little time was gained by the transmission across the river, from one State to the other. When Hamilton gave to Knight a draft or check of this kind, he took one of like amount from Knight, and *vice versa*. Such was the fact in the present case. Knight gave Hamilton this check for $1,210, which Hamilton wished to use, and was to provide for when it reached E. Kinney & Co., on whom it was drawn, in Cincinnati. But at the same time Knight took from Hamilton a check, on the Farmers' Bank of Kentucky, for the same amount, which, in their testimony, they call a memorandum check.

It seems that the occasion for resorting to this way of raising money was that Hamilton had had a 'draft for $1,200, on which the plaintiff, Rankin, was accommodation indorser, discounted at the Farmers' Bank. This draft had been protested for non-acceptance, and Hamilton left this check of Knight with the bank, to be collected and the money applied to the payment of his own draft, indorsed by Rankin, making the amount $1,210, so that the excess of $10 might pay expenses. At first he did not indorse the check, though it was payable to his order, but afterward he did indorse it, at the request of the bank, as it seems to us probable from the evidence.

The bank compelled Rankin, by suit and judgment, to pay the protested note, and then passed over to him the note, together with this check, which it held as collateral to it. Neither the bank nor Rankin had notice of the peculiar origin of the check.

The court, at Special Term, regarded Rankin as a *bona*

*fide* holder of the check, without notice of anything in its origin giving it the character of accommodation paper, and found, accordingly, that the plaintiff was entitled to recover.

It is now urged that this check was mere accommodation paper, and passed to the bank as collateral merely to the protested note, without any giving of time or other consideration on the part of the bank, and that it falls within the case of *Roxborough* v. *Messick*, 6 Ohio St. 448, which decided that a holder of a collateral note, taken to secure an existing debt, is not a holder for valuable consideration, and that Rankin took the right of the bank only, and stands in its shoes. This position would seem to be well taken, unless this check is to be considered as given for value.

What, then, is the relation of parties who exchange their paper in the way which was adopted by Hamilton and Knight? Were both checks accommodation checks, or was one a consideration for the other, so that suit might be maintained by one against the other?

If Knight had sold or procured a discount of the check of Hamilton, he would have had no defense in a suit even by Hamilton against him on this check. But as he held it as a memorandum check, as they call it, can he, Knight, be regarded as standing in a better condition?

It appears, in fact, to be the common case of cross notes or cross checks—one given in consideration of the other. The liability of one was the consideration for the promise of the other, and, therefore, the paper must be regarded as valid, negotiable paper, founded on a valuable consideration. To this point authorities are not wanting. *Cowley* v. *Dunlop*, 7 T. R. 565, 9 E. 190, and *Buckler* v. *Brettivant*, 3 E. 72, where it is held that the cross notes are to be taken as showing the contract between the parties, and "that the law will not raise any promise *extra* the notes or bills," which are evidence of absolute debts. *Eaton* v. *Carey*, 10 Pick. 214; *Dowe* v. *Schutt*, 2 Denio, 623. In *Whittier* v. *Eager*, 1 Al. R. 499, the court say, Bigelow, J., giving the opinion of the court, "Nothing is better settled than that a

promissory note, given by the maker in exchange for a note given to him by the payee, is for a good consideration, and is in no proper sense an accommodation note, although made for the mutual convenience of the parties. *Higginson* v. *Gray*, 6 Met. 218. Being a valid note, on which the defendant was liable, it was wholly immaterial whether the plaintiff, as indorsee, took it for value." To the same effect are *Trustees* v. *Hill*, 12 Met. 462; *Fields* v. *Stemston*, 1 Cold. (Tenn.) 40; *Burdson* v. *Benton*, 9 Q. B. 823.

It would seem to follow that this check was a valid check in the hands of Hamilton, given for a valuable consideration, viz: his liability on his check given to Knight, unless there are other circumstances to render the principle of cross notes or checks inapplicable, and Hamilton was entitled to use it. He did transfer it to the bank as collateral to the protested note, and the bank transferred it to the plaintiff, who had paid the note for Hamilton's accommodation to secure him in the same way the bank was secured by it.

Such is the conclusion to which a majority of the court has come, although it has not been without difficulty. One of the difficulties in adopting the conclusion we have stated is, that the check upon the National Bank, given by Hamilton in exchange for that on which this suit is founded, was not stamped; and the question arises, whether this want of a stamp made it void. If it was void, it would not amount to a consideration for the other check. But unless the omission to affix the stamp was intended to defraud the revenue, the paper was not rendered invalid by it. Upon the principle of *Harper* v. *Clark*, 17 Ohio St. 190, we do not think that this paper was invalid for want of the stamp. Besides, Knight could have put on the necessary stamp and canceled it as well as Hamilton.

Another difficulty in the case is, that it is stated that this check of Hamilton was a memorandum check, and was not to be presented to the bank. This presents a more serious objection to our theory of the case. We are satisfied that the exchange of checks was made on this

occasion at the instance, and for the special accommodation, of Hamilton. And it would seem probable that it was not expected that Knight should present Hamilton's check to the bank on which it was drawn. But we can not suppose, from the whole transaction, that it was the purpose of the parties that Knight should not be at liberty to present the check, especially if Hamilton failed to provide for the payment of Knight's check. We must take the transaction to be as evidenced by the papers. Knight had the legal power to use the check of Hamilton, and we can not adopt any other theory of the transaction than that it was actually intended that the power should be used if fonnd necessary.

It is proper to add that, at the time of the exchange of these checks, viz., December 31, 1869, there was an indebtedness from Knight to Hamilton, on other transactions, of $278.78, although this balance was afterward changed, before this suit was commenced, and before the plaintiff received the check from the bank, so that there was a balance of $83.97 in favor of Knight against Hamilton.

But we prefer to found our opinion upon the ground that these exchange checks were valid and available as checks given for a valuable consideration. The fact that Knight now produces Hamilton's check and attaches it to the evidence in the case, can not make a difference.

STORER, J., dissented.